UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JULIE MARIE STRONG,

                      Plaintiff,

             v.

NANCY A. BERRYHILL,[1] Commissioner of
  Social Security,

                      Defendant.

**DECISION
and
ORDER

17-CV-1286F
(consent)**

_____

APPEARANCES:           LAW OFFICES OF KENNETH HILLER, PLLC
                              Attorneys for Plaintiff
                              KENNETH R. HILLER and
                              JUSTIN DAVID JONES, of Counsel
                              6000 North Bailey Avenue, Suite 1A
                              Amherst, New York 14226

                              JAMES P. KENNEDY, JR.
                              UNITED STATES ATTORNEY
                              Attorney for Defendant
                              Federal Centre
                              138 Delaware Avenue
                              Buffalo, New York 14202
                                    and
                              SIXTINA FERNANDEZ,
                              Special Assistant United States Attorney, of Counsel
                              Social Security Administration
                              Office of General Counsel
                              26 Federal Plaza, Room 3904
                              New York, New York 10278
                                    and
                              DENNIS J. CANNING, and
                              SCOTT C. KELLER,
                              Special Assistant United States Attorneys, of Counsel
                              Social Security Administration
                              Office of General Counsel
                              601 East 12th Street, Room 965
                              Kansas City, Missouri 64106

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on April 17, 2018, and pursuant to Rule 25(d) of the Federal Rules of Civil Procedure is automatically substituted as the defendant in this suit with no further action required to continue the action.

## JURISDICTION

On June 19, 2018, the parties to this action, consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned. (Dkt. 7). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on August 27, 2018 (Dkt. 10), and by Defendant on November 2, 2018 (Dkt. 15).

## BACKGROUND

Plaintiff Julie Marie Strong ("Plaintiff"), brings this action under the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on August 12, 2013, for Disability Insurance Benefits under Title II of the Act ("SSDI" or "disability benefits"). Plaintiff originally alleged she became disabled on February 1, 2010, AR[2] at 204, based on neck and spine conditions, depression and anxiety. AR at 204, 208. Plaintiff's application initially was denied on October 24, 2013, AR at 88-100, and at the reconsideration level on February 20, 2014.[3] AR at 101-13. At Plaintiff's timely request, on May 3, 2016, a hearing ("the administrative hearing"), was held in Buffalo, New York before administrative law judge Melissa Lin Jones ("the ALJ"), at which Plaintiff, represented by legal counsel Stephen Brooks, Esq., and vocational expert ("VE") Michele Erbacher ("VE Erbacher") appeared

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on June 26, 2018 (Dkt. 8).
[3] Plaintiff filed her disability benefits claim while a resident of California. Her reconsideration was based on a surgery after the initial denial. After the reconsideration denial, Plaintiff relocated to the Western District of New York and her claim was transferred.

and testified. AR at 50-87. During the administrative hearing, Plaintiff amended her alleged disability onset date to October 25, 2010. AR at 57.

On July 26, 2016, the ALJ issued a decision denying Plaintiff's claim. AR at 27-47 ("the ALJ's decision"). On October 11, 2017, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision. AR at 1-7. On December 11, 2017, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On August 27, 2018, Plaintiff filed a motion for judgment on the pleadings (Dkt. 10) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 10-1) ("Plaintiff's Memorandum"). On November 2, 2018, Defendant filed a motion for judgment on the pleadings (Dkt. 15) ("Defendant's Motion"), attaching Defendant's Brief in Support of Defendant's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Standing Order on Social Security Cases (Dkt. 15-1) ("Defendant's Memorandum"). In further support of Plaintiff's Motion, Plaintiff filed on December 17, 2018, Plaintiff's Response to the Commissioner's Brief in Support of the Defendant's Motion for Judgment on the Pleadings (Dkt. 16) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

# **FACTS**[4]

Plaintiff Julie Marie Strong ("Plaintiff" or "Strong"), born March 7, 1964, was 46 years old as of October 25, 2010, her amended alleged disability onset date ("DOD"), and 52 as of the May 3, 2016 administrative hearing. AR at 57, 204. Plaintiff is a high school graduate and attended some college. AR at 59. Although born and raised in the western New York area, at age 22 Plaintiff moved to Phoenix, Arizona to live with her mother and sister, and the next year moved to San Diego, California, AR at 319, where Plaintiff worked, as relevant here, at veterinary hospitals as a veterinary technician, receptionist, and research associate, as well as a pet store clerk. AR at 59-61, 223-27. On June 25, 2009, while working in California as a research associate, Plaintiff sustained a work-related injury, following which Plaintiff underwent three surgeries on her cervical spine, including on May 19, 2011 ("first surgery"), June 28, 2012 ("second surgery"), and November 14, 2013 ("third surgery"). AR at 336, 362, 455, 466. Plaintiff has not worked since February 1, 2010, her original disability onset date, AR at 208-09, and last saw her surgeon on April 2014, just before Plaintiff moved from California back to New York where the cost of living is lower. AR at 54-55, 73. Plaintiff has no children, lives alone, takes care of her house, yard, and pet dogs and parrot, and socializes with friends once or twice a month, and with her aunt every two to three months. AR at 69-70, 73, 75-76. Plaintiff has a driver's license, but avoiding driving long distances because of her spine condition, but has no medical driving restrictions. AR at 72-74. In moving from California to New York, Plaintiff drove for three weeks in a passenger vehicle, sharing driving with a friend. AR at 73.

---

[4] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.

**DISCUSSION**

**1.    Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has

instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2.      Disability Determination**

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful activity ("SGA") during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement,[6] there is a presumption of inability to perform SGA and the claimant is deemed disabled regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.
[6] The duration requirement mandates the impairment must last or be expected to last for at least a continuous twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

6

applicant's "residual functional capacity" ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff meets the Act's insured status requirement for SSDI through December 31, 2015, AR at 32, Plaintiff has not engaged in SGA since her amended alleged disability onset date of October 25, 2010, *id.*, that Plaintiff suffers from the severe impairments of degenerative disc disease and joint dysfunction, AR at 32-33, but that Plaintiff's other medically determinable impairments of a major depression and anxiety do not have more than a minimal impact on Plaintiff's ability to do work activities, *id.* at 33-34, that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpt. P, App. 1, *id.* at 34-35, and that Plaintiff

7

retains the RFC to perform light work limited to occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, crawling, working at unprotected heights or around heavy mechanical parts, and reaching overhead, up, down and forward with the left arm, but can never climb ladders or scaffolds, and Plaintiff is further limited to simple work with only occasional handling or fingering with her dominant (right) extremity. [7] AR at 35-41. The ALJ further found Plaintiff unable to perform any past relevant work, AR at 41, yet given Plaintiff's age, high school education with the ability to communicate in English, lack of transferable skills from her past work experience and RFC, jobs exist in significant number in the national economy that Plaintiff can perform including as an investigator dealer and a counter clerk, such that Plaintiff is not disabled as defined under the Act. *Id.* at 41-42.

Plaintiff does not contest the ALJ's findings with regard to the first three steps of the five-step analysis, but argues the ALJ erred at step four in evaluating the medical opinions of John G. Lane, M.D. ("Dr. Lane"), Plaintiff's Memorandum at 24-28, and further erred at step five in failing to reconcile a conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT") regarding the two jobs the VE found Plaintiff can, despite her RFC, perform. *Id.* at 17-24. Defendant maintains the ALJ properly considered Dr. Lane's medical opinions, Defendant's Memorandum at 13-19, and properly found Plaintiff could perform other work in the economy. *Id.* at 19-22. In reply, Plaintiff reiterates the ALJ did not evaluate Dr. Lane's opinion according to proper factors, Plaintiff's Reply at 4-5, nor reconcile the VE's testimony with the DOT. *Id.* at 1-4.

---

[7] In addition to her cervical spine, Plaintiff also injured her shoulder when she fell at work on June 25, 2009, and has a history of right carpal tunnel syndrome. AR at 33, 36.

**A.    Step Four**

Plaintiff argues the ALJ failed to assign weight and explain her reasoning as to each of Dr. Lane's opinions,[8] and thus treated the multiple opinions as one, and further misread the December 17, 2012 opinion, erroneously considering it as "situational" given Dr. Lane reported Plaintiff's symptoms were unlikely to change. Plaintiff's Memorandum at 24-28. Defendant maintains the ALJ did not erroneously discount Dr. Lane's December 17, 2012 opinion because Plaintiff, at the time, was recovering from her second surgery, and Dr. Lane did not anticipate Plaintiff would undergo the third surgery, such that his opinion was situational. Defendant's Memorandum at 13-19. Plaintiff asserts Defendant relies on a *post hoc* rationalization for the ALJ's rejection of Dr. Lane's December 17, 2012 opinion. Plaintiff's Reply at 4-5. Plaintiff's argument on this issue is without merit.

Preliminarily, Dr. Lane's final assessment on December 17, 2012, that Plaintiff had reached "permanent and stationary status," and that "maximal medical improvement has been achieved" with Plaintiff limited to lifting no more than 10 lbs., AR at 342, is consistent with work at the exertional level of sedentary, as opposed to light. [9]

---

[8] The court notes that although the ALJ refers to Dr. Lane as Plaintiff's "treating doctor," AR at 39, a plain reading of Dr. Lane's opinions establishes that Dr. Lane's relationship with Plaintiff was as a consultative examiner in connection with Plaintiff's disability benefits application. AR at 334-73.

[9] As defined under the applicable regulations, "sedentary" work
> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carryout job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

Further, "light" work
> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of

Accordingly, whether the ALJ properly considered Dr. Lane's opinions is critical because other than the investigator dealer and counter clerk positions, both of light exertion, the VE was unable to identify any other jobs existing in the national economy that Plaintiff could perform given Plaintiff's RFC, as assessed by the ALJ, is less than the full range of sedentary work given Plaintiff's restricted ability to handle and finger with her dominant hand. AR at 35, 84-85.

In connection with Plaintiff's Workers' Compensation claim, Dr. Lane examined Plaintiff on four occasions, including September 27, 2010 (AR at 362),[10] January 9, 2012 (AR at 361-73), May 7, 2012 (AR at 350-60), and December 17, 2012 (AR at 334-49). On January 9, 2012, Dr. Lane opined Plaintiff had yet to achieve "permanent and stationary status" and was "temporarily precluded from heavy lifting as well as repetitive cervical motions." AR at 367. Dr. Lane similarly opined on May 7, 2012, that Plaintiff "is not yet permanent and stationary," and "may perform modified duties with no heavy lifting or repetitive cervical motions." AR at 355. On December 17, 2012, Dr. Lane reported "[a] permanent and stationary status has been achieved as of this date, and maximal medical improvement has been achieved" with Plaintiff "precluded from lifting greater than ten pounds, as well as repetitive cervical motions." AR at 342. The ALJ considered Dr. Lane's December 17, 2012 opinion as "situational to the claimant's recovery from surgery" and accorded it "little weight." AR at 39.

---

        these activities. If someone can do light work, we determine that he or she can do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[10] Although Dr. Lane refers to Plaintiff as having been "previously examined in my capacity as an Agreed Medical Evaluator on September 27, 2010," AR at 362, no report from such examination is in the record.

Nothing supports Plaintiff's assertion that the ALJ failed to consider each of Dr. Lane's opinions in the record; rather, the ALJ reiterates each of Dr. Lane's opinions on Plaintiff's ability to work following the examinations on January 9, 2012, May 7, 2012, and December 17, 2012, when Dr. Lane opined "maximal medical improvement has been achieved" with Plaintiff unable to lift more than 10 lbs. or engage in repetitive cervical motions. AR at 39. Further, despite Dr. Lane's statement in the December 17, 2012 opinion that Plaintiff "is not going to undergo further surgical treatment," AR at 341, that Plaintiff did, in fact, undergo further surgery on November 14, 2013, AR at 466-47, following which Plaintiff's symptoms were reported on January 20, 2014, as much improved, AR at 468, cannot be ignored. Simply, the third surgery, although not anticipated on December 17, 2012, renders the December 17, 2012 opinion "situational." Accordingly, the ALJ did not err by considering the opinion "situational to Plaintiff's recovery from [the second] surgery" and according it "little weight" in light of the improvement Plaintiff experienced following the third surgery on November 14, 2013, such that the ALJ's assessment of Plaintiff's RFC at step four is supported by substantial evidence in the record.

**B.      Step Five**

Plaintiff argues the ALJ erred at step five by failing to reconcile a conflict between the VE's testimony and the DOT regarding the two jobs the VE found that Plaintiff, given her RFC, can perform. Plaintiff's Memorandum at 17-24. In opposition, Defendant argues the ALJ properly found Plaintiff could perform other work in the economy. Defendant's Memorandum at 19-22. In reply, Plaintiff repeats the argument that the ALJ failed to reconcile the VE's testimony with the DOT. Plaintiff's Reply at 1-4.

11

According to Plaintiff, the ALJ's inclusion in Plaintiff's RFC of a restriction to "simple work" precludes Plaintiff from the counter clerk position, defined under the DOT as "an individual who collects film for processing and collects payments from customers at a 'photofinishing establishment.'" Plaintiff's Memorandum at 21. According to Plaintiff, the DOT further specifies that the counter clerk position requires "level three in clerical perception," which, although not defined in the DOT, is defined in its successor, the Occupational Information Network ("O*NET"). *Id.* at 22. Plaintiff urges the court to apply the O*net definitions in lieu of the DOT because the DOT is a database which has not been updated in three decades, and the United States Department of Labor's current preferred database is the O*NET, which defines "clerical perception" as "'the ability to see details in written materials quickly and correctly.'" Plaintiff's Memorandum at 22 (quoting Ability Profiler: Scoring Program User's Guide 2 (U.D. Dep't of Labor Version 4.2 2012). Further, "'[t]he material may be text or numbers on a page, in lists, or in tables,'" *id.*, and "'involves noticing if there are mistakes in the text and numbers, or if there are careless errors in working math problems.'" Plaintiff's argument is without merit.

> Specifically, Social Security Ruling[11] ("SSR") 00-4P provides in pertinent part that
>
> In making disability determinations, we rely primarily on the DOT (including its companion publication, the [Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupations Titles] SCO), for information about the requirements of work in the national economy. [The SSA] use[s] these publications at steps 4 and 5 of the sequential process. When there is an apparent unresolved conflict between the VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the

---

[11] Social Security Rulings are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted." 20 C.F.R. 402.35(b)(1).

> claimant is disabled. At the hearing levels, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE . . . evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

SSR 00-4P, 2000 WL 1898704, at * 2.

The VE's reliance on the DOT, despite not having been updated in more than 25 years, remains "'an accepted basis for vocational opinion according to the Commissioner's rules.'" *Waldvogel v. Comm'r of Soc. Sec.*, 2017 WL 3995590, at * 14 (N.D.N.Y. Sept. 11, 2017) (quoting *Henry v. Colvin*, 2015 WL 9238959, at *7 n. 7 (S.D.N.Y. Dec. 17, 2015)). *See also Brault v. Social Security Administration, Commissioner*, 683 F.3d 443, 446 (2d Cir. 2012) ("the DOT is so valued that a VE whose evidence conflicts with the DOT must provide a 'reasonable explanation' to the ALJ for the conflict."); *Valentin v. Berryhill*, 2018 WL 4300119, at * (D.Conn. Sept. 9, 2018) (holding the ALJ did not err at step 5 by relying on job descriptions in the DOT rather than on the O*NET); and *Ryan v. Astrue*, 650 F.Supp.2d 207, 218 (N.D.N.Y. 2009) ("Even if the VE's testimony was in conflict with O'Net [*sic*], there is no requirement that the VE's testimony comply with that database. Instead, the VE's testimony must comply with the DOT."). Significantly, here, the asserted inconsistency arises not from the VE's testimony and the DOT, but from Plaintiff's reliance on the O*net for the definition of "simple work" which Plaintiff, for reasons unexplained, equates with "clerical perception" which, as discussed, is not defined under the DOT. Accordingly, Plaintiff has interjected an issue where none otherwise existed.

13

Significantly, Plaintiff does not point to any caselaw from within the Second Circuit holding the VE's reliance on the DOT's job descriptions is improper. Nor does Plaintiff reference any authority calling into doubt the accuracy of job descriptions contained in the DOT as compared to those contained in the O*NET but, rather, baldly concludes that because the DOT's job descriptions have not been updated since 1991, they must be less accurate than those found on the O*NET database. In any event, unlike the DOT, O*NET does not appear in the Social Security Rulings as an approved source nor one with which the VE's testimony must be consistent. *See Allen ex rel. Allen v. Comm'r of Soc. Sec.*, 2017 WL 6001830, at * 7 *N.D.N.Y. Dec. 4, 2017) (finding the plaintiff's argument that "the DOT is outdated and not an accurate representation of occupations in today's world [ ] interesting but must fail," because 20 C.F.R. § 419.966(d)(1) provides "an ALJ may take administrative notice of job data from 'various governmental and other publications' including the DOT."); *see also* SSR 00-4P, 2000 WL 1898704, at * 2 ("In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO), for information about the requirements of work in the national economy."). The evidence in the record also is clear that the VE is a certified rehabilitation counselor, with a master's degree in rehabilitation counseling, a field in which the VE has worked since 2006, AR at 299-300, and the ALJ at the administrative hearing obtained Plaintiff's waiver to any objections as to the VE's qualifications. AR at 76-77. Accordingly, the ALJ did not err in accepting the VE's testimony that Plaintiff's RFC permitted Plaintiff to perform the counter clerk position.

Significantly, the ALJ need identify only one job that the Plaintiff can perform. *See* 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a

significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications"). *See also*, *McQuaid v. Astrue*, 2012 WL 5472300, at *5 (N.D.N.Y. Nov. 9, 2012) (a "finding of one job is sufficient to demonstrate that there is other work that [plaintiff] could perform"). Accordingly, because the ALJ's finding that Plaintiff could work as a counter clerk was not improper, there is at least one job in the national economy that Plaintiff can perform negating the court's need to address whether the ALJ erred in determining Plaintiff can also perform the investigative dealer position.

As such, the ALJ's step five determination that work exists in the national economy that Plaintiff can perform despite her RFC is supported by substantial evidence in the record.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 10) is DENIED; Defendant's Motion (Dkt. 15) is GRANTED. The Clerk of Court is directed to close the file.
SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: June 12th, 2019
Buffalo, New York